UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALDA MURFREE-FLEMING,<br><br>                Plaintiff,<br><br>      v.<br><br>JAMES H. BILLINGTON,<br><br>                Defendant. | Civil Action 05-01180 (HHK) |

MEMORANDUM OPINION

      Valda Murfree-Fleming, an employee of the Library of Congress (the "Library"), brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*, against James H. Billington in his official capacity as Librarian of Congress. Murfree-Fleming claims that the Library subjected her to unlawful discrimination on the basis of her gender and race in connection with a reassignment of personnel and the duties they performed within the division in which she worked. Asserting that Murfree-Fleming failed to exhaust her administrative remedies with respect to her gender discrimination claim and that she is unable to establish a prima facie case of race discrimination, the Library moves for summary judgment (#10). Upon consideration of the motion, the opposition thereto, and the summary-judgment record, the court concludes that the motion must be granted.

## I. BACKGROUND

Murfree-Fleming, a Black female, began working at the Library in 1991 as a supervisor in the Copyright Office. In 1994, she was transferred to the Office of Affirmative Action/Special Programs where she became a GS-7 Professional Development Associate. The following year, she was transferred again, this time to the Library's Contracts & Logistics Office ("C&L") where she became a GS-1102-9 Procurement Specialist. Murfree-Fleming's position as a Procurement Specialist was a career ladder position that began at the GS-7 level and progressed to the GS-11 level. On November 10, 1996, she was promoted to GS-11.

When Murfree-Fleming joined C&L, the office was divided into two teams. One team handled "large purchases," consisting of contracts valued over $50,000, and the other team handled "small purchases," consisting of contracts valued under $50,000. In 1998, as the result of a realignment, the duties of the large and small purchases teams were combined although the employees were still divided into two teams.

In 2001, Martin Contract Management, Inc. ("MCM") was hired to perform an efficiency study of C&L. MCM found that approximately 70% of C&L's work involved contracts over $100,000, and the remaining 30% involved contracts under $100,000. In light of its findings, MCM recommended that C&L be divided into two teams. One team would handle purchases over $100,000, and the other team would handle purchases under $100,000. Subsequently, C&L implemented the recommendation and hired Catherine Martin of MCM to oversee the transition. Consistent with MCM's study and recommendations, Martin divided the office into two teams and assigned employees to each. Murfree-Fleming was assigned to the team handling purchases

under $100,000. The team handling purchases over $100,000 consisted of three employees, each of them a White female. Within a year of being hired, Martin left the Library. In November 2002, C&L was realigned again. After this realignment, all C&L employees had the opportunity to work on contracts, regardless of their dollar value.

On July 3, 2002, Murfree-Fleming filed a complaint with the EEOC alleging that the Library engaged in unlawful discrimination in assigning employees to teams during the realignment in 2001.

## II.  ANALYSIS

A.  **Gender Discrimination Claim**

Before filing a civil action under Title VII, a federal employee must first exhaust her administrative remedies. A crucial step in the administrative exhaustion process is for the employee to give the agency adequate notice of the matter of which she complains. Indeed, it has been said that "[a]dequacy of notice is the core of Title VII's administrative exhaustion requirements." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). The allegations in the administrative complaint must be sufficiently specific in order to "give federal agencies an opportunity to handle matters internally whenever possible." *Id.*; *see Park v. Howard Univ.*, 71 F.3d 904, 908–09 (D.C. Cir. 1995) (holding that the plaintiff's administrative remedies were not exhausted because her EEOC complaint contained nothing that could reasonably be expected upon investigation to lead to the discovery of a hostile work environment). Specificity in a charge is not a "mere technicality" and compliance with all EEOC procedures and deadlines is mandatory. *Park*, 71 F.3d at 907.

Murfree-Fleming's EEOC complaint alleges that she was discriminated against on the basis of race alone. It fails to mention (or even insinuate) a gender discrimination charge that could reasonably be expected to have been encompassed within the Library of Congress' investigation. Therefore, Murfree-Fleming's gender discrimination claim must be dismissed.[1] **B.**

**Race Discrimination Claim**

**1.       Prima Facie Case**

When, as here, a Title VII plaintiff proffers only indirect evidence of unlawful discrimination, her case is subject to the three-part test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case by showing that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). An adverse action requires "a significant change in employment status, such as hiring, firing, failing to promote, *reassignment with significantly different responsibilities*, or a decision causing significant change in benefits." *Brown*, 199 F.3d at 456 (emphasis added). Absent a reduction in pay or benefits, *only* those actions creating "materially adverse consequences

---

[1] On the form provided by the EEOC for a complainant to indicate the type of discrimination to which she was allegedly subjected, Murfree-Fleming checked the box for race discrimination and not the box for gender discrimination. Pl.'s EEOC Compl. ¶ 9. Murfree-Fleming's uncorroborated assertion that "she [is] confident that she [amended] her [EEOC] complaint to state gender as well," Pl.'s Opp'n ¶ 15, is insufficient to show that she exhausted her administrative remedies.

Separate and apart from Murfree-Fleming's failure to exhaust her administrative remedies, her gender discrimination is fatally flawed because it is illogical. How can Murfee-Fleming claim gender discrimination when all of the members on the team that she felt she should have been on were women?

affecting the terms, conditions, or privileges of her employment opportunities" amount to adverse actions. *Id.* at 457. "Purely subjective injuries, such as dissatisfaction with a reassignment . . . are not adverse actions." *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002).

The library asserts that Murfree-Fleming fails to make out a prima facie case because she did not suffer an adverse employment action. Murfree-Fleming responds that she suffered an adverse employment action when she was placed on the team that only handled contracts under $100,000 "without her permission or input" and the Library "directed its employees to do what ever work it wanted to them [sic]." Pl.'s Opp'n at 10. Also, the reorganization "eliminated [her] potential for promotion." Pl.'s Compl. ¶ 16. Murfree-Fleming's position cannot be sustained.

The failure to give an employee "desirable" or "important" work assignments is not an adverse action as a matter of law. *See Bryant v. Brownlee*, 265 F. Supp. 2d 52, 61 (D.D.C. 2003) (finding that plaintiff's allegation that she was given unimportant work did not rise to the level of adverse employment action). Murfree-Fleming admits that during the realignment, "everything remained at the same level," Pl.'s Dep. 99:5–100:22, and she does not challenge the Library's assertion that she "retained her GS-11 grade level, maintained her Contract Specialist position, continued to make the same salary, continued to receive cost of living raises, continued to accrue benefits at the same level, continued to work on contracts, and maintained the same supervisor." Pl.'s Opp'n ¶ 13.

Murfree-Fleming's assertion that the realignment eliminated her potential for promotion is particularly unpersuasive. During the realignment, which lasted for approximately one year,

Murfree-Fleming was a GS-11, the top grade for her career ladder position. Therefore, in order be promoted, Murfree-Fleming had to apply and compete for a higher grade level position. There are no non-selections at issue here, however, and Murfree-Fleming has not identified any specific promotion that she sought but did not receive (and where the realignment was a factor in the decision not to promote her).[2]

### 2.    The Library's Reason For The Realignment

Even if Murfree-Fleming could establish a prima facie case of racial discrimination, the Library has provided a legitimate, non-discriminatory reason for its actions. Murfree-Fleming's claim rests solely upon the fact that the three-member team assigned to work on contracts over $100,000 during the realignment consisted of all White females. However, it is only "in the absence of a legitimate explanation [that a court should] infer the existence of an illegitimate one." *Aka v. Washington Hosp. Center*, 156 F.3d 1284, 1292–93 (D.C. Cir. 1998).

Here, the Library maintains — and Murfree-Fleming agrees — that the realignment was the result of an efficiency study conducted by an outside organization in 2001. The study revealed an uneven distribution of C&L's workload and recommended a realignment where the division would be split into two teams. More specifically, the study found that seventy percent of C&L's work involved contracts under $100,000, while the remaining thirty percent involved

---

[2] Although there are no non-selections presently at issue, employment actions which create "materially adverse consequences affecting . . . [an employee's] future employment opportunities" can be considered adverse. *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999). In order to make that determination, the Court must have an "objective basis for finding that she was harmed by [the realignment] in [a] tangible way," *id.*, which it does not. Plaintiff's unsubstantiated allegation that the realignment "resulted in major changes which significantly reduced [her] career prospects," Pl.'s Opp'n to Summ. J. at 11, is not sufficient for a reasonable trier of fact to conclude that she suffered an *objectively tangible harm*. *Brown*, 199 F.3d at 452.

contracts over $100,000. The Library points out, without contradiction, that an employee's experience level was taken into consideration when it decided the team to which the employees should be assigned. The three women chosen to work on contracts over $100,000 were all senior in grade-level to everyone assigned to the other team (including Murfree-Fleming).[3] Nowhere in the record is there evidence that the Library's stated reason was pretextual and that the true reason was discriminatory.

### III. CONCLUSION

For the foregoing reasons, the court concludes that the motion to dismiss must be granted. An appropriate order accompanies this memorandum.

Henry H. Kennedy, Jr.
United States District Judge

Date: July 17, 2007

---

[3] Even if plaintiff was as experienced as the women on the other team, however, "[e]mployers have the discretion to choose among qualified candidates, 'provided that decision is not based upon unlawful criteria.'" *Ramey v. Bowsher*, 915 F.2d 731, 735 (D.C. Cir. 1990) (quoting *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 259 (1981)). Moreover, "that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose [the employer] to Title VII liability." *Id.*